## Frank Wozniak, Appellee, v. August Siegle, Appellant.

## Gen. No. 27,256.

BROKERS—*"exclusive agent"* *not entitled to commissions on sale* *by owner.* An "exclusive agency" to sell real property does not deprive the owner of the right to sell the property himself or render him liable to the broker for commissions on a sale made by the owner without the intervention of the broker although the agency contract provides that the owner shall pay commissions in case the property is sold either through the broker "or any other person."

Appeal from the Circuit Court of Cook county; the Hon. HARRY B. MILLER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Reversed. Opinion filed November 29, 1922.

J. M. CAMELON, for appellant.

No appearance for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

The plaintiff, Wozniak, brought suit before a justice of the peace for certain commissions for the sale of a piece of real estate belonging to the defendant, and recovered judgment in the sum of $220. An appeal from that judgment was taken to the circuit court of Cook county where, upon a new trial, without a jury, the plaintiff recovered a judgment in the sum of $230. This appeal is from the latter judgment. No brief has been filed on behalf of the plaintiff.

On May 12, 1921, the defendant, Siegle, entered into a written contract with the plaintiff by which the plaintiff in express terms was appointed the "exclusive agent" of Siegle, the defendant, to sell a certain piece of property known as Lot 20, for $4,000. By that contract it was also provided that the plaintiff should have and might retain "from the proceeds arising from

such sale R. E. B. commission on the above price,'' and, further, ''in case said property is sold within said time (no time, however, was mentioned in the writing) either through F. Wozniak or any other person, then in that case I promise to pay you R. E. B. Com. on the whole amount for which said property may be sold.''

It is the evidence of the plaintiff that he made an effort to obtain a purchaser for the premises; that he had a display card in his window showing that the premises in question were for sale; that in September, 1920, he had a talk in his real estate office with one Drzyinski; that the latter said he had sold his own property and was looking for a business property; that the plaintiff submitted the defendant's property to him and told him he thought he could buy it for $4,000; that subsequently he had another conversation with Drzyinski in regard to the same property; that there was some talk with the defendant about a lease which was on the premises which the defendant was to produce; that the premises in question were right across the street from the plaintiff's office; that he also had a talk with one Lutonski in June or July, 1920; that Lutonski came to his office and asked him if he had any business properties that would be suitable for a dry goods store or something of that kind; that he, the plaintiff, said to him, ''Well, how would that do across the street, here, direct across the street from me?'' That Lutonski said ''that looks pretty good'' and asked the price; that the plaintiff told him he thought he could buy that for $4,000; that he further told Lutonski that there was a lease out which the owner promised to bring in and that was the only thing in the way.

On October 19, 1920, the defendant sold the premises in question to one Gutauski and his wife as joint tenants. Subsequently the defendant notified the plaintiff as follows: ''You are hereby notified that I do hereby revoke the writing of May 12, 1919, author-

izing you as agent to make sale of property in Cook County, Illinois, known as Lot 20," etc.   The purchaser of the property, Gutauski, was at the time of the purchase a tenant of the property.

The evidence of the witness Drzyinski is to the effect that the plaintiff in September or November, he says he cannot remember the date, showed him the premises in question; that he had asked the plaintiff if he had any building for sale, and told him that he, the witness, had sold his own; that the plaintiff said to him, "Yes, I got across the street nice building"; that the witness answered, "I look for a business building I sold mine"; that the plaintiff then said, "Well, I let you know after awhile, he deliver lease to me, then I let you know."   The defendant Siegle testified that he put the property in the hands of the plaintiff for sale but that the latter did nothing.   The evidence shows that on August 25, 1920, he had his daughter write to the plaintiff as follows:   "You can insure it for the same amount of money as the last.   You've got to work on it now, I want to sell it if I pay you some commission.   I will be there the 8th or 9th of this month."   He further testified that in September he found that his tenant desired to buy it and that he sold it to him for $4,200.   The defendant admitted that the plaintiff was present when the deal was closed at the bank, and the property sold to Gutauski.   Gutauski testified that he lived on the premises for two years before he bought it from the defendant.

It is the contention of counsel for the defendant that although the latter employed the plaintiff as his exclusive agent to sell the defendant's property no commission was earned as the defendant himself, without the assistance of his agent, brought about and consummated the sale; and that an exclusive agency does not prohibit the owner himself from making a sale of the property.

There are many decisions holding that giving in ex-

press terms an "exclusive agency" does not, *per se,* take away from the owner the right to sell, but merely prohibits the appointment of another agent. An exclusive agency is not necessarily coequal with an exclusive right. The words "agent" and "agency" import the contemporaneous existence of a principal and a principal may act for himself. If, however, an exclusive right to sell is given, that, perforce, excludes the idea that a right to sell still remains in the owner. The distinction may seem, at first blush, to be captious and nice, but, upon analysis, it is found to be substantial. In *Dole v. Sherwood,* 41 Minn. 535, the court said: "It is settled, at least in this State, that where an agency to sell real estate on commission is given, the exclusive right to sell not being given, the owner himself has still the right to make a sale independent of the agent, and in such case will not be liable to the agent for commissions unless he sells to a purchaser procured by the agent." *Smith v. Preiss,* 117 Minn. 392, 136 N. W. 7; *Bomar v. Munn* (Tex. Civ. App.), 158 S. W. 1186; *Dreyfus v. Richardson,* 20 Cal. App. 800, 130 Pac. 161; *Ingold v. Symonds,* 125 Iowa 82, 99 N. W. 713. Of course, an owner may make a promise whereby he relinquishes his own authority, within a given time, to sell, and whether he has done so must always be determined by his own overt acts, that is, his words and conduct.

In the instant case, an examination of the paper signed by the defendant shows that in the first part he designated the plaintiff as his exclusive agent, and then, later, provided that in case the property was sold, "either through Wozniak or any other person" he would be liable for a commission. The use of the words "exclusive agent" and "Wozniak or any other person" are consistent and unambiguous only by construing them as showing an intention to empower the plaintiff as the sole agent. If we should construe the

Wozniak v. Siegle, 226 Ill. App. 619.

words "any other person" as meaning the exclusion of the defendant, then the phraseology of the instrument, all taken together, would be conflicting. It is the law that all its contents must be considered and weighed and co-ordinated so as to ascertain the true intent. We are of the opinion that the written promise of the defendant empowered the plaintiff as an exclusive agent, but did not give him the exclusive right; that there still remained in the defendant, the owner, the right to sell, to act as seller for and by himself; and, as the plaintiff was not given an exclusive right but only an exclusive agency, and as there is no evidence that the plaintiff procured a purchaser of the property, but, on the contrary, evidence that the defendant, himself, made the sale, there is no obligation on the part of the defendant for any commissions, and the judgment must be reversed.

*Reversed.*

THOMSON, P. J., and O'CONNOR, J., concur.